SOUTH & NORTH ALABAMA R. CO. v. RAILROAD COMMISSION OF ALABAMA et al.

(District Court, M. D. Alabama. December, 1913.)

No. 263.

1. CARRIERS (§ 12*) — STATE REGULATION OF RATES — REASONABLENESS OF RATES.

In determining the reasonableness of a rate of passenger fare established by a state commission to be charged by a railroad company on intrastate business, a rate voluntarily established by the company, in common with practically all other companies doing business in that part of the country, and maintained for many years, may properly be accepted as reasonable, and used as a basis for comparison; and, where it appears that its earnings, under the new rate, although such rate is lower, have exceeded those of its most prosperous year under the old rate, a finding is justified that the new rate is reasonable, unless there has been a material increase in the cost of the service.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*]

2. CARRIERS (§ 12*) — STATE REGULATION OF RATES — REASONABLENESS OF RATES.

If the yield to a railroad company from intrastate passenger earnings under a specific rate is reasonable in amount to remunerate it for the service performed thereunder, confiscation cannot result from such a rate, even though it be also true that the entire earnings derived from intrastate business, both freight and passenger, are unremunerative, the reasonableness of a single rate or a partial schedule being open to separate contestation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*]

3. CARRIERS (§ 12*) — STATE REGULATION OF RATES — REASONABLENESS OF RATES.

If a rate of passenger fare established by a state commission on intrastate business will yield a reasonable return to a railroad company for the service, it cannot be held confiscatory by the courts because it fails to yield, in addition, an amount to compensate for prior losses.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*]

4. CARRIERS (§ 12*)—STATE REGULATION OF RATES—REASONABLENESS OF PASSENGER RATES.

A 2½-cent passenger rate established by the Railroad Commission of Alabama on intrastate business held not confiscatory as to complainant railroad company, on a motion for preliminary injunction.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*]

5. INJUNCTION (§§ 135, 136*) — PRELIMINARY INJUNCTION — DISCRETION OF COURT.

The granting or refusal of a preliminary injunction rests in the sound discretion of the court under the circumstances of the particular case, and it should only issue in cases of extreme urgency, where the right is clear, and where considerations of the relative inconvenience are strongly in complainants' favor.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 304, 305, 306; Dec. Dig. §§ 135, 136.*]

6. CARRIERS (§ 18*)—ORDER OF STATE COMMISSION FIXING RATES—REASONABLENESS OF RATES.

Evidence considered, and held insufficient to warrant the granting of a preliminary injunction to restrain the enforcement of an order of the Railroad Commission of Alabama, reducing the rate of passenger fare on complainant's road from 3 cents per mile to 2½ cents, on the ground that the reduced rate is confiscatory, where the value of complainant's property devoted to the intrastate passenger service and other matters bearing on the cost of such service were in serious dispute, and not clearly or satisfactorily established.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. § 18.*]

In Equity. Suit by the South & North Alabama Railroad Company of Alabama against the Railroad Commission of Alabama and others. On motions for preliminary injunction. Denied.

See, also, 196 Fed. 800.

Henry L. Stone and W. A. Colston, both of Louisville, Ky., Sydney J. Bowie, of Birmingham, Ala., and J. M. Foster, of Montgomery, Ala., for complainant.

S. D. Weakley, of Birmingham, Ala., and R. C. Brickell, Atty. Gen., of Alabama, for defendants, Charles Henderson, Leon McCord and Frank M. Julian, composing the Railroad Commission of Alabama.

Before SHELBY, Circuit Judge, and NILES and GRUBB, District Judges.

On Application for Temporary Injunction.

NILES, District Judge, made the following statement of facts:

On September 9, 1913, complainant filed a supplemental bill of complaint to its original and supplemental bills herein, reciting that, since the rendering and filing of the decree in this case on April 2,

1912, in the United States Circuit Court for the Middle District of Alabama, sitting in equity at Montgomery, Ala. (the jurisdiction and records of which court have been transferred to this court by sections 289, 290, and 291 of the Judicial Code of the United States), the defendants, Charles Henderson, Leon McCord, and Frank N. Julian, constituting the Railroad Commission of Alabama, regardless of said decree, issued to complainant on June 13, 1912, a citation or order to show cause why the said commission should not fix and establish reasonable passenger rates to be charged between points on complainant's line within the state of Alabama. Said citation recited that the said commission believed the rate of three cents per mile for transportation of passengers on complainant's line in the state of Alabama was unreasonable, and fixed a date to wit, July 1, 1912, to determine the question. Complainant, pursuant to said citation, appeared on July 15, 1912, by counsel before the commission, and filed a protest against the authority of defendants to proceed because of the previous adjudication and decree in said United States Circuit Court, which said decree, or the substantive part, is as follows:

"This cause having been submitted upon the exceptions of the complainant and of the defendants, respectively, to the master's report, and upon the pleadings and evidence for a final decree, and having been argued by counsel and considered and understood by the court, it is considered, ordered and adjudged by the court:

"First. That the exceptions of the defendants to so much of the master's report as finds that the several acts of the Legislature of Alabama, regulating the rates to be charged by common carrier railroads for the transportation of passengers and property, unlawfully interfere with the regulation of interstate commerce by Congress, and are therefore violative of section 8, article 1, of the Constitution of the United States, be, and the same are hereby, sustained.

"Second. That the several exceptions filed by the complainant to the master's report, and all other exceptions filed by the defendants, be, and the same are each hereby, overruled.

"Third. That the provisions of the act of the Legislature approved March 2, 1907, and entitled, 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation originating and terminating within the state, of certain articles, and for this purpose to classify said articles and said railroads,' in connection with the rates provided for and limited by the other acts of the Legislature of Alabama covered by this decree, operated to deprive complainant of its property without due process of law, and the act was, prior to its repeal, therefore, violative of the Constitution of the United States, and void, as to complainant.

"And the eight several acts of the Legislature approved on November 23, 1907, and entitled, respectively, as follows:

"'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation originating and terminating within the state, of certain articles or commodities to be known as Group 1, and for this purpose to classify said railroads.

"'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 2, and for this purpose to classify said railroads.

"'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole

or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 3, and for this purpose to classify said railroads.

" 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 4, and for this purpose to classify said railroads.

" 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 5, and for this purpose to classify said railroads.

" 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 6, and for this purpose to classify said railroads.

" 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 7, and for this purpose to classify said railroads.

" 'An act to fix and establish the maximum rates to be charged by railroads now operating, or which may hereafter operate, as common carriers, in whole or in part in the state of Alabama, for the transportation, originating and terminating within the state, of certain articles or commodities, to be known as Group 8, and for this purpose to classify said railroads.' .

"And so much of the Code of 1907, as re-enacts the said several acts, in connection with the maximum rate act and the passenger rate act covered by this decree, operate to deny to the complainant the equal protection of the laws, and deprive it of its property without process of law, in violation of the fourteenth amendment of the Constitution of the United States, and are each null and void, as to complainant.

"Fourth. That the act of the Legislature of Alabama, approved February 9, 1907, and entitled, 'An act to make the railroads' rate of freight in force January 1, 1907, for the transportation, originating and terminating within this state, the maximum rates,' and an act of the Legislature of Alabama approved February 14, 1907, entitled, 'An act to prescribe and regulate passenger rates on all railroads other than street railroads carrying passengers between points within the state of Alabama,' and so much of the Code of Alabama of 1907 as re-enacts the provisions of said several acts, in connection with the other rate acts covered by this decree, operate to likewise deprive complainant of its property without due process of law, in violation of the fourteenth amendment of the Constitution of the United States, and are each null and void, as to complainant, and that said act of the Legislature of Alabama approved February 14, 1907, entitled, 'An act to prescribe and regulate passenger rates on all railroads other than street railroads carrying passengers between points within the state of Alabama,' in connection with the several orders of the Railroad Commission of Alabama allowing railroads other than complainant to charge more than 2½ cents a mile for transportation of passengers, operates to deny to complainant the equal protection of the law, and for this reason also renders said act, in connection with said orders, violative of the fourteenth amendment of the Constitution of the United States.

"Fifth. That so much of the order of the Railroad Commission of Alabama as provides that on and after December 1, 1907, complainant shall charge at the rate of 2¾ cents a mile for transportation of all passengers between points in Alabama who are transported partly over complainant's road and partly over certain other railroads with which complainant's road connects, in connection with the other rate statutes covered by this decree, operates to deprive complainant of its property without due process of law, and is, as to complainant, violative of the fourteenth amendment of the Constitution of the United States.

"Sixth. That the defendants, and each of them and their respective successors in office, and all and every other person, are hereby enjoined from bringing any action, in any court, or from taking any other steps against complainant, or. any of its officers, agents, or employés, to compel it or them to observe or to enforce any of the said several acts of the Legislature of Alabama, or of said order of the Railroad Commission, or to forfeit the license or right of complainant to do an interstate freight and passenger business in the state of Alabama on account of its having instituted or prosecuted this cause.

"Seventh. If, and when, circumstances shall have changed so that the rates fixed in said several acts of the Legislature of Alabama will yield to complainant reasonable compensation for the services performed and a reasonable return upon the property devoted to the service, the Railroad Commission of Alabama and the Attorney General of said state, or either of them, may appear to the court by bill or otherwise, as they may be advised, for a further order in that behalf, and that jurisdiction over said cause be retained for that purpose.

"Eighth. That no freight or passenger rate in conflict with the provisions of any of the said several acts shall be charged by complainant prior to the 15th day of April, 1912.

"Ninth. That complainant and defendant each pay the attendance fee of their respective witnesses, and that each pay one-half of all of the other costs of the cause.                    Thos. G. Jones, United States District Judge.

"Filed 2d day of April, 1912, at 3:45 o'clock p. m.
        "Harvey E. Jones, Clerk,            By Ellen W. Jackson, Deputy."

That the record of the commission shows no proceedings by or before it prior to the issuance of said order to show cause on June 13, 1912.

The commission upon consideration overruled complainant's protest as to jurisdiction and the plea of res adjudicata, and decided to proceed regardless thereof. Complainant again protested because of the failure of commission to observe due process of law in the investigation, in addition to the above-mentioned grounds of protest. Thereupon, on November 1, 1912, a hearing was had upon the issue. It was agreed by counsel that all testimony introduced in the hearing of the cause before the federal court, upon which was based the decree of the said United States Circuit Court of date of April 2, 1912, might be introduced in any proceeding which might be brought before any federal judge looking to an application for an injunction against any order the commission might make in the case. Afterwards, to wit, on August 25, 1913, the commission issued the following order:

"Railroad Commission of Alabama.

"Montgomery, Ala., August 25, 1913.
"Railroad Commission of Alabama v. South & North Alabama Railroad Company.
"Citation to show Cause why This Commission should Not Establish Just and Reasonable Passenger Rates on Your Line of Road between Points within the State of Alabama.  Docket No. 709.
"The above cause having been heard at a previous session of the commission, and, after a careful consideration of the testimony in this case, this commission is of the opinion that the present passenger rates charged by the South & North Alabama Railroad Company are unreasonable, therefore, it is ordered, that the South & North Alabama Company publish and make effective between all points on its line of road in Alabama, a standard passenger rate of two and one-half cents (2½) per passenger mile for adults, and a rate of one and one-fourth (1¼) cents per passenger mile for children not over twelve (12) nor under five (5) years of age, and that it shall also

publish and make effective joint rates between all points in Alabama, between which it now has joint rates, and its proportion of such joint rates, shall not exceed the above standard rates described.

"Railroad Commission of Alabama,
"By Chas. Henderson, President."

The above order was duly served upon complainant, the effect of which, complainant contends, is to deprive it of its property without due process of law, and deny it the equal protection of the laws in violation of the provisions of section 1 of the fourteenth amendment to the Constitution of the United States. Further, that unless said order of the commission is immediately restrained and enjoined as prayed for herein, complainant will, by reason of the enormous penalties provided by the statutes of Alabama for failure to comply with said order of the commission, be compelled to put into effect the rates provided in said order, a compliance with which would deprive it of its property without due process of law and the equal protection thereof, guaranteed by the federal Constitution.

Complainant copies into the bill the said statutes of Alabama relating to the case.

Complainant further says that the commission in issuing said order acted in an arbitrary, capricious, and unreasonable manner, exceeding the authority delegated to it by the law, and erred as to matter of law, and that the said rates fixed thereby are unfair, unreasonable, and invalid in the following respects, as follows:

"(A) Defendants were and are without jurisdiction to establish any passenger rates on complainant's lines between points within the state of Alabama, because the reasonableness of complainant's present passenger rates is res adjudicata, having been actually and directly in issue in this suit, and having been judicially passed upon and determined by the Circuit Court of the United States for the Middle District of Alabama, and being conclusively settled by the decree of that court.

"(B) Said defendants, constituting the Railroad Commission of Alabama, were, and are, without jurisdiction to establish the maximum passenger rates of 2½ cents per mile on complainant's lines between points within the state of Alabama, because the unreasonableness and confiscatory character of the maximum passenger rate of 2½ cents per mile for transportation on complainant's lines within the state of Alabama is res adjudicata, having been actually and directly in issue in this suit, and having been judicially passed upon and determined by the Circuit Court of the United States for the Middle District of Alabama, and being conclusively settled by the decree of that court.

"(C) Defendants are without statutory or other authority to establish any rates on complainant's lines until complainant's existing rates are found to be unreasonable, or unjustly discriminatory, according to due process of law; and complainant's existing rates cannot be and could not, in accordance with the evidence, have been found to be, either unreasonable or unjustly discriminatory, and defendants have not afforded or followed due process of law in their investigation.

"(D) Said order issued by defendants, constituting the Railroad Commission of Alabama, on the 25th day of August, 1913, would, if enforced, necessarily amount to an interference with and a burden upon interstate commerce, and is therefore in violation of section 3548 of the Civil Code of Alabama, and without authority of law, and is furthermore in violation of the Constitution of the United States, and particularly in violation of the third clause of the eighth section of article 1 of said Constitution.

"(E) Even if defendants had jurisdiction to make an order with respect to complainant's intrastate passenger rate in the state of Alabama, the order made is arbitrary, capricious, and unlawful because it is not based upon any

evidence, and the finding and order of the commission are contrary to the uncontradicted evidence introduced before said defendants, constituting the Railroad Commission of Alabama.

"(F) Even if the defendants had jurisdiction to make an order with respect to complainant's intrastate passenger rates in the state of Alabama, the order made is arbitrary, unreasonable, and unlawful because the enforcement of said order would result in confiscation of complainant's property without due process of law and without just compensation, and in denial of the equal protection of the laws of the state of Alabama, and in violation of the provisions of section 1 of the fourteenth amendment."

. Complainant, proceeding, says that an estoppel exists against defendants with respect to complainants intrastate rates in Alabama, and with respect to reasonableness or unreasonableness thereof, because such rates and such reasonableness were identical facts or circumstances included in the former litigation, and defendants are estopped to allege anything concerning such facts or circumstances contrary to said judgment and decree of the Circuit Court of the United States for the Middle District of Alabama in this cause rendered and filed. That because in said suit the reasonableness of complainant's present intrastate passenger rates in Alabama was determined, said issue is res adjudicata, and is as a plea, a bar, and as evidence, conclusive.

. Complainant further says that there has not been any change in circumstances so that the passenger rates fixed by said order of the commission will yield to complainant reasonable compensation for the services performed, and a reasonable return upon the property devoted to that service, and that neither the commission nor the Attorney General of Alabama has applied to the court, by bill or otherwise, for a further order in that behalf, but that said order of the commission, herein complained of, was issued without such application, and regardless of the jurisdiction retained by the court over this cause for that purpose.

Complainant further says that the determination of the reasonableness or unreasonableness of complainant's intrastate passenger rates in the state of Alabama, upon which determination the power of the commission to fix rates is necessarily predicated, involves necessarily the determination of values and the distribution of accounts, jurisdiction over which values and accounts Congress has directly conferred upon the Interstate Commerce Commission in sections 19a and 20 of the act to regulate commerce; that therefor the enforcement of said order would necessarily amount to an interference with and a burden upon interstate commerce, rendering said order unlawful, unconstitutional, and void.

Complainant further says the present passenger rate of 3 cents per mile is fair, reasonable, and just, and that "far from being prohibitive of the free movement of passengers or other traffic, has encouraged and promoted travel and transportation, and increased the production, commerce, and population of the country tributary to complainant's lines in the state of Alabama," though such rates between points in Alabama "have never yielded as much as a fair, just return on the value of complainant's property within the state of Alabama devoted to the service" of carrying such intrastate passengers.

Complainant says further that it is not only entitled to earn a fair return from its intrastate traffic in the state of Alabama upon the value of the property devoted to intrastate traffic passenger and freight combined, but it is also entitled to earn from its interstate passenger traffic in the state of Alabama, separately considered, a fair return upon the value of the property to its intrastate passenger traffic, to wit, not less than 8 per cent.

Complainant submits a statement constructed according to the unit of service basis or plan of distributing operating expenses and other items, which was approved by the master and court in this case, showing that at full railroad rates, or at the maximum rates of 3 cents per mile charged by the railroad company, complainant's intrastate passenger traffic in the state of Alabama did not yield a fair return upon the value of the property devoted to said traffic.

Complainant refers to its several exhibits, made a part of the bill, in proof of its claim that not only its intrastate passenger business does not yield a fair return, but that it is not earning a fair return from all its business in the state of Alabama, interstate, intrastate, passenger, and freight combined, based upon the value of property devoted to the traffic.

Complainant further says that the operation of its lines for each of 41 fiscal years ending June 30, 1913, have not been profitable, and that from the beginning until the date mentioned it has failed to earn its fixed charges by an average annual amount of $152,674.78. Finally complainant says that its loss from the reduction of its intrastate passenger rates in Alabama as provided in the order of the commission herein complained of would amount to more than $92,500 per annum.

The bill concludes with a prayer for relief, and until a final hearing the usual restraining order. A restraining order as prayed was granted, staying the operation of the order of the commission until a motion for an injunction pendente lite could be heard.

Defendants, composing the commission, filed their answer, admitting the issuance of the citation or order to complainant to show cause as to the unreasonableness of its intrastate passenger rate in Alabama, but denying that said citation was issued regardless of the decree of April 2, 1912, of the United States Circuit Court for the Middle District of Alabama. Defendants claim they proceeded in strict accordance with the Alabama statutes in such case made and provided, and in all their proceedings complainant was afforded every opportunity of making its lawful defense—quoting in full the said statutes. Defendants further say that on the final hearing, after full and painstaking consideration of the evidence and complainant's several contentions, the commission reached the conclusion that, under conditions prevailing at the time said order was entered, the passenger rate of 3 cents per mile of complainant in Alabama on intrastate business was unreasonable, and that a rate of 2½ cents per mile should be established as a just and reasonable rate, fair alike to the railroad company and the public.

Defendants refer to the testimony of Sam P. Kennedy, Secretary of the Railroad Commission of Alabama, in support of their position, and the brief and argument of H. C. Secheimer, Esq., introduced herein.

Defendants deny that the order of the Railroad Commission would not afford a fair return upon the value of the property used in transporting passengers affected by said rate, or that the said rates are unfair or unreasonable or unlawful, but, on the contrary, said order was fair and proper, and should be observed.

Defendants allege that in the figures and accounts shown before the master and the court by the complainant on the hearing prior to the final decree in said cause, there were inaccuracies, for the reason that the alleged value of the property devoted to public use is too high, and the operating expenses and taxes assigned to intrastate business are excessive, and derived by a method which is unfair to intrastate business; that the unit of service basis which is employed in said accounts, for the most part, is unfair, unreasonable and unjust to intrastate business, and was devised for the purpose of complainant's litigation with the state of Alabama, and has not been previously used by experts, and that the same is so unreliable and unreasonable that it cannot be accepted with safety by the court as a means of ascertaining intrastate operating expenses.

Defendants deny complainant would lose a revenue of $92,500 per annum if the order of the commission held.

Defendants further say that the complainant is managed, controlled, and operated by the Louisville & Nashville Railroad as one of its divisions in the state of Alabama, owning about 90 per cent. or more, of its stock, controlling it since 1873, fixing its rates, etc., and in all respects managing and operating it.

Further, that on February 19, 1913, the Alabama Railroad Commission fixed a 2½-cent passenger rate on the other divisions and lines of the Louisville & Nashville Railroad in the state of Alabama, except the South & North Alabama Division (complainant), and that the said 2½-cent passenger rate is now in effect on the Louisville & Nashville Railroad's other divisions in the state of Alabama, and has been since August 12, 1913, after the order of the commission had been approved by a majority of the special tribunal of three federal judges to pass on and determine the application of the Louisville & Nashville Railroad for an injunction restraining said order of the commission.

Finally defendants allege that the conditions and amount of business are such on the South & North Division of the Louisville & Nashville Railroad—that is, on the line of the complainant—that the 2½-cent intrastate passenger rate is sufficiently high, and that the same is fair and reasonable alike both to the carrier and to the public, and that no reason exists why complainant should enjoy on said lines a higher rate than the Louisville & Nashville and other railroads in the state of Alabama that are now charging and receiving 2½ cents per passenger mile on intrastate business in the state of Alabama.

The bill herein recites various items in support of its grievances as contributing to its losses in passenger earnings among them, especially, the custom of the rebuying of tickets at state lines by interstate passengers. These items the court does not consider necessary to embody in this opinion, as being of secondary import as applied to this issue, which is an application for a preliminary injunction.

GRUBB, District Judge. This matter comes on to be heard upon the application of the plaintiff for an injunction pendente lite against the Railroad Commission of Alabama, restraining the enforcement of an order, the effect of which was to reduce the plaintiff's passenger fare of 3 cents a mile for adults to 2½ cents, with like reduction for half fares.

The questions of res adjudicata, due process of law, and interference with interstate commerce, with reference to the proceeding before the Commission, are not different from those presented in the case of Louisville & Nashville Railroad Co. v. Railroad Commission of Alabama et al. (D. C.) 208 Fed. 35, decided by this court, and may be ruled against the plaintiff as they were in that case, without extended discussion.

The questions as to whether the plaintiff would receive a fair return on its property devoted to intrastate business, after the restoration of its voluntary freight rates, and with the 2½-cent passenger rate enforced, and if not, whether the enforcement of the 2½-cent passenger rate would materially contribute to the result, remain for decision. The facts upon which these questions are to be decided differ from those presented to the court in the Louisville & Nashville Case, and the plaintiff contends that these differences should result in a different decision, and the plaintiff also contends that some of the legal conclusions which formed the basis of that decision are erroneous, and should be reconsidered by the court, with the result of a different conclusion in this case.

The principal criticism of the decision of the court in the Louisville & Nashville Case is directed at that part of the opinion which holds that a showing of increased earnings under the reduced rate over what the plaintiff had received in former prosperous years under the 3-cent fare, though such increase could not be traced to stimulation of traffic due to the reduction, might avail to show that confiscation did not result from the reduction.

One contention of plaintiff is that if the increase in earnings under the reduced rate is due to increased density of traffic, or to increased prosperity, or to any cause other than stimulation, the plaintiff is entitled to the benefit of such increase as against legislative reduction of rates, at least up to the point where the increase under the reduced rate is such as to yield only a fair return on the property devoted to the public use. The soundness of this contention does not admit of doubt. The question is each case remains as to whether the increase under the reduced rate has or has not brought the earnings up to or beyond the point of remuneration.

The plaintiff also contends that the voluntary putting in force and maintaining for a time of a rate by the carrier does not estop the carrier from thereafter asserting that the rate is so unreasonably low as to be confiscatory, upon its subsequent discovery of that fact. This contention is also sound.

Applying these legal principles to the Louisville & Nashville Case, the plaintiff argues that the court's conclusion, from the fact that the passenger earnings in 1912 under the reduced rate had exceeded those

for the prosperous year of 1907 under the 3-cent rate, that the reduced rate was not confiscatory is an erroneous one. The argument assumes that the court, in reaching this conclusion in the Louisville & Nashville Case, held that the state had power to deprive the carrier of a part of its increased earnings by rate reductions, though such increase still left the carrier's earnings below the point of remuneration, and that the putting in force and maintenance of a 3-cent passenger rate voluntarily by the carrier prevented it from afterwards asserting the unremunerativeness of the 3-cent rate, though it could in fact be shown to be unremunerative. We think counsel are mistaken in each assumption.

The court found from the record in that case that the increase in passenger earnings under the reduced rate had in fact passed beyond the remunerative point, resting its finding partly, it is true, upon the fact that the earnings had passed the amount yielded during the carrier's most prosperous years under the 3-cent fare, which it had voluntarily put in force and for many years maintained. The court did not hold that the putting in force and maintenance of the 3-cent rate estopped the carrier from thereafter showing its unremunerativeness, if it was able to do so, but did hold the voluntary maintenance of the rate for a long period operated as an admission by the carrier of its reasonableness, to dispel the effect of which clear proof to the contrary would be necessary, and that such clearness of proof was not forthcoming. The court found that the 3-cent fare, while in force, had been a reasonable one to the carrier, and did not hold that the carrier by its action in employing the 3-cent fare had precluded itself from ever thereafter asserting its unreasonableness.

[1] The plaintiff's criticism must therefore lie with the finding of the court that the 3-cent fare yielded fair returns to the carrier, and with its reasons for reaching that conclusion. The record in the Louisville & Nashville Case showed that this rate of fare was one of the carrier's own adoption, which it had continued to maintain, after years of opportunity for experiment, and where and when it was not induced to do so by the demands of competition, and that it had, some years before the hearing, voluntarily reduced existing 4-cent rates of fare on its branch lines to 3 cents, to provide uniformity of fares over its system. These facts are persuasive that the plaintiff in the Louisville & Nashville Case, after ample opportunity to determine the reasonableness of a 3-cent fare, had arrived at a conclusion favorable to the reasonableness of that rate of fare. The court also had in mind the fact that before the era of rate regulation, the passenger carriers of the Southern states had adopted, almost without exception, a standard passenger rate of 3 cents a mile, and, except when it was reduced by rate regulation, had maintained this standard rate up to the time of the hearing, and that it was hardly conceivable that the passenger carriers of the country, with their facilities for determining whether or not a rate was remunerative, and with years of opportunity in which to experiment, would voluntarily, without the pressure of rate regulation or competition, have maintained a 3-cent fare if it was attended with confiscatory results.

These were some of the facts, which the court felt justified it in assuming in the Louisville & Nashville Case, as a basis of fair comparison, the results which attended the operation of the 3-cent fare, and in holding that when the returns under the reduced fare had substantially passed beyond the returns of the carrier's most prosperous year under the 3-cent fare, the reduced fare was shown to be reasonable, since it equaled or exceeded the returns which had been yielded to the carrier under the old and reasonable fare. After reviewing the reasons which induced us to hold in the Louisville & Nashville Case that the 3-cent fare was reasonable, and giving careful consideration to the reasons assigned by the plaintiff against the correctness of our conclusion, we remain persuaded that the action of the plaintiff in that case, and that of practically all the carriers of passengers, including the plaintiff in this case, in the South, in voluntarily maintaining for years a 3-cent maximum fare, is controlling of any evidence contained in that record tending to show its unreasonableness to the carrier. We still hold that the return to the carriers under the 3-cent fare, while it was operative, is a proper basis of comparison with the returns to the carriers under the reduced fare, by which to determine the reasonableness of the reduction. In the case we are now considering, we think it proper to consider, along with the other evidence, the action of this plaintiff in maintaining, after opportunity for experiment and when not compelled by state action or by competition, a 3-cent fare, as evidence of the reasonableness to this plaintiff of that rate of fare, while it was in force; and, after giving careful consideration to all the evidence in the record, we hold that the 3-cent fare, while kept in force on the plaintiff's railroad, was a reasonable fare to the carrier, and that the results of its operation afford proper bases with which to compare the results of the operation of the reduced fare of 2½ cents, while it was in force, with the view of determining its reasonableness in the future to the carrier.

[2] If the yield to the carrier from intrastate passenger earnings under a specific rate are reasonable in amount, then confiscation cannot result from such a rate, even though it be also true that the entire earnings derived from intrastate business, both freight and passenger, are unremunerative. The remedy for such a situation is the adjustment of freight rates, and not the disturbance of the passenger rates. A deficiency in intrastate earnings, due to unreasonably low freight rates, should be overcome by raising freight rates till they afford a reasonable return, and not by raising already reasonable passenger rates to accomplish that end.

The problem presented by the record in this case is not the effect of an entire schedule of freight and passenger rates on plaintiff's intrastate business. If this were the issue, a showing that the plaintiff did not receive, under the complete schedule, adequate returns would be conclusive of its right to redress as against the schedule. In a case like this one, in which a part only of the entire schedule is assailed, two questions must be decided before the relief is granted: First, whether or not the intrastate business of the carrier is properly remunerative; and, second, whether or not, if the returns from its entire

intrastate business are not properly remunerative, this condition is due to, or contributed to materially or substantially by, the enforcement of the portion of the schedule, which, alone, is complained of.

If it appears that the portion of the schedule alone complained of is reasonable to the carrier, and affords a fair return on the property devoted by it to the service, then the injury to the carrier's business is accomplished elsewhere, and the business affected by the rates complained of should not be made to assume any part of the burden. Where a single rate or a partial schedule is the subject-matter of contention, the reasonableness of a single rate or partial schedule is an issue, as well as the sufficiency in the aggregate of the returns upon the carrier's intrastate business. The insufficiency of the aggregate return is conclusive in favor of the carrier only as against the entire schedule. The reasonableness of a single rate or partial schedule is open to contestation, though the aggregate return may appear to be insufficient. The corollary of a contrary holding would be that the carrier would have the right to burden traffic, the rates upon which were already reasonably high, by increases, with the purpose of making up a deficiency caused by other traffic, with relation to which the rates were too low. The cost of the service, charges made by other carriers for similar service, and many elements, other than the aggregate returns from the carrier's entire business, enter into the inquiry as to the reasonableness of a specific rate, all of which would be excluded from consideration if insufficiency in the aggregate were held to be controlling.

In this case it may be that the plaintiff will receive insufficient returns on its entire intrastate business under the present schedules and the reduced passenger rate. This will or will not show the confiscatory nature of the reduced passenger rates, depending upon whether or not the insufficiency is brought about in whole or in part by the fact that the returns yielded by the reduced passenger rate are too small to properly remunerate the carrier for the service performed under that rate. If the returns to the plaintiff from intrastate passenger business under the reduced rate are ample to remunerate it for the service performed, and afford a fair return to it upon the property devoted to that traffic, the plaintiff must look for redress for any insufficiency in its aggregate intrastate earnings to the other rates, which affect unfavorably its intrastate freight traffic. The passenger rates alone being the issue in this case, the reasonableness of that rate is the vital question, upon which the alleged insufficient aggregate return to plaintiff, on its entire intrastate business, is merely one among many circumstances to which the court should look. If, after considering all the pertinent facts, the court is of the opinion that the $2\frac{1}{2}$-cent fare is reasonable, then the plaintiff's right to relief in this case fails, though its entire intrastate business does not yield it a fair return on the property devoted to that class of business.

The plaintiff has offered evidence tending to show separately that the $2\frac{1}{2}$-cent fare will not yield it a fair return on the value of the property, which it asserts is devoted to intrastate passenger business. The defendants, on the other hand, contend that, under a proper dis-

tribution of expenses and values, the 2½-cent fare will produce an adequate return, upon the value of the property attributable to intrastate passenger business. The plaintiff's net income, over all charges, for the fiscal year of 1912, from all sources, amounted to $565,876, which is approximately 16 per cent. on its outstanding capital stock of about $3,500,000. The net return for that year would, after deducting all charges, except interest on plaintiff's bonds, amount to about $1,-200,000, and would pay 5 per cent. upon the total valuation of plaintiff's property, as estimated by it, of approximately $24,000,000. The net passenger train earnings for the same year, after deducting therefrom the proportionate share of taxes on the revenue basis, were $564,-538, which would yield in excess of 6 per cent. upon the plaintiff's valuation of the property devoted to passenger business, using the method adopted by plaintiff to distribute value and expense between passenger and freight business. These figures quite clearly show that a showing of confiscation from the reduced rate depends upon whether the values and expenses are properly distributed by plaintiff's method as between passenger and freight and inter and intra state business. As to this the parties are in disagreement. The plaintiff contends that all supposed errors as to values and expenses as between inter and intra state and passenger and freight business, which may have occurred in the Louisville & Nashville Case, have been corrected in this case, and that there is an indisputable showing of inadequate return, as a result of the corrected methods. The defendants contend that errors in plaintiff's figures as to valuation and distribution still exist, and make results of its methods worthless. Such consideration of the respective contentions as the limited time allowed us permits us has been given, and still leaves our minds in a state of uncertainty as to the correct conclusion to be deduced as to plaintiff's methods of valuation and distribution and the results predicated upon them.

The following facts are indisputably shown by the record bearing upon the effect of the reduced rate on intrastate passenger earnings during the time it was in force, and in comparison with like earnings under the 3-cent fare: There has been a steady increase of passengers carried annually from 1907 to 1913, except for panic years. This applies to both inter and intra state passengers. The increase in intrastate passengers carried for the year 1912 over 1907 was 247,473, or approximately 30 per cent. The increase in intrastate passenger miles during the same period amounted to 9,061,824, or 42 per cent. The increase for 1913 in passengers over 1907 was 383,970, or 45.99 per cent., and in passenger miles 12,510,738, or 58.12 per cent. The increase in intrastate passenger revenue for the year 1912 (under the 2½-cent rate, except for 2½ months) over the year 1907 (under the 3-cent fare) was $143,154.35, or approximately 25 per cent. For the year 1913 (under the 3-cent fare) the increase in revenue over that of the year 1907 was $285,931, and when reduced to a 2½-cent basis, assuming that all travel was at the 3-cent fare, the increase would be $137,167, which is in excess of 20 per cent. The plaintiff's own figures conclusively show that gross intrastate passenger earnings under the 2½-cent fare, while in force, exceeded in the year 1912 sub-

stantially all previous records of intrastate passenger earnings under the 3-cent fare, even for the most prosperous years. The plaintiff's figures for 1913 for passengers and passenger miles and for passenger revenue, after being reduced to the 2½-cent basis, for all travel, show a greater condition of increase. The year 1909 is the only year during the period of the 2½-cent fare that shows less gross intrastate passenger earnings than the year 1907, the most prosperous year under the 3-cent fare. The year 1910 shows approximately equal gross intrastate passenger earnings with those of 1907, though the fare was half a cent less. The years 1911, 1912, and 1913 (the latter after reduction to the 2½-cent basis) show very substantial increases on gross intrastate passenger revenue over that of 1907. If the 3-cent fare yielded plaintiff reasonable returns on intrastate passenger business in 1907, then it follows that the 2½-cent fare yielded reasonable returns during the years 1911, 1912, and would have yielded reasonable returns during the year 1913 if in force, unless the plaintiff was entitled to a greater percentage of return during those years than it was in 1907, or unless it cost the plaintiff so much more to earn the returns for those years than it did to earn the return for the year 1907, that, while the gross return was greater, the net was less than in 1907.

For the reasons heretofore assigned, we cannot disabuse our minds of the opinion that the 3-cent fare was reasonable to the carrier in 1907, and that the returns yielded by it afford proper bases of comparison with the returns yielded by the 2½-cent fare, in testing the reasonableness of the 2½-cent fare while in force, and now, if restored. As the 2½-cent fare produced, while it was in force, and would still produce if now in force, larger returns to the plaintiff than the 3-cent fare did while it was in force, the holding by us that it was reasonable necessarily implies the reasonableness of the 2½-cent fare, subject to the qualifications just stated.

It is quite clear that the plaintiff could not complain of a reduced rate, if the effect of it was to stimulate traffic to the extent of making up, by the increased travel due to stimulation, the loss in revenue from the reduction in rate that would otherwise have resulted. A substantial part of the increased travel, after the 2½-cent rate became effective, however, was doubtless due to causes other than stimulation from the reduction. The plaintiff claims that it is entitled to the benefit of all the increase not due to stimulation, free from legislative interference. It is, as against such interference, only entitled to it, if the increased returns do not yield the plaintiff a fair return on the property devoted to the class of business from which the earnings are derived. If the 3-cent fare, when in force, was reasonable, and the amount yielded by it was less than that yielded afterwards by the 2½-cent fare, when in force, or that would be yielded now by it if restored, then confiscation would be shown to result from its restoration only upon a showing of changed conditions, then and now.

[3] It is claimed that the plaintiff in its pioneer years received either no return or a less than a fair return for the service rendered, and upon the property devoted to the public use, and should be per-

mitted a greater return now, to compensate for prior losses. If the 2½-cent fare will yield a reasonable return to the carrier at present, we do not think that it can be said to be confiscatory, because it fails to yield in addition an amount for the purpose of recouping prior losses. The distribution of the increment due to increased population in the tributary territory and to increased density of traffic is, as between the carrier and its patrons, a matter of legislative policy, not to be controlled by the courts, unless less is left to the carrier than a fair return for the service rendered and the property employed at the time the court is called upon to act.

[4] The contention of the plaintiff that estimates should be made over a series of years rather than from a single year—that since some years are lean in returns and some fat, the only fair criterion is the average—is a reasonable one. The returns relied upon by the court under the 2½-cent fare are not for one year alone, but for each of the years 1910, 1911, and 1912, and the reduced returns for 1913. With these years returns for the year 1907, a year of unexcelled prosperity, are compared. The returns for a series of years before and after 1907, instead of for that year alone, would be more favorable to the 2½-cent fare.

It is also contended that the comparison is between gross earnings under the two rates respectively, and that the net returns to the carrier is the test of reasonableness, as is undoubtedly the case. The record fails to show that the increased travel was handled at any considerably increased cost. The increase in train miles in the later period was substantially altogether the result of two additional trains that passed over the plaintiff's railroad during the night, and were destined to accommodate interstate traffic almost exclusively. The old trains would have well accommodated the intrastate traffic. The record also shows that the cars in intrastate trains up to 1909 were not filled to their capacity, and there is no satisfactory showing of an increase of car miles thereafter, caused by increased intrastate travel. The additional terminal and accounting expenses could not be considerable, and its amount does not satisfactorily appear. We do not think that the record shows that the increased travel since 1907 was handled at such an increased expense as to leave the net returns below the remunerative point, because of it.

It is also contended that the cost of operation has increased since 1907, because of higher wages, higher prices for material, and increased taxes, and that net returns are rendered less in proportion thereby. If the record showed that the increased gross intrastate passenger returns are now reduced in the net, below the remunerative point, because of increased cost of passenger operation, the reduced rate would be thereby shown to be unreasonably low to the carrier. There is no separate showing of the amount of the increase on the passenger operation, due to increased wages, prices, and taxes, or that the increased gross intrastate passenger earnings were reduced thereby so that the net return failed to be properly remunerative to the plaintiff. By the methods of distributing expense and value of property, as between inter and intra state passenger business, adopted

by plaintiff, the returns upon plaintiff's entire intrastate business, and by inference from the claimed equal or greater cost to earn a dollar in passenger business than in freight, upon its intrastate passenger business, are shown to be inadequate. There is a table of percentage of operating expenses to gross revenue during a period of years, showing increasing ratios. There is no showing of the effect of the increase in wages, prices, and taxes upon net receipts from its intrastate passenger traffic. In the absence of a specific showing of the amount and effect of such increased cost of passenger operation on the plaintiff's net returns from its intrastate passenger traffic, we cannot reach the conclusion that otherwise adequate gross intrastate passenger returns are reduced below the point of confiscation by increases in the cost of operation generally, as shown by increasing ratios.

Our conclusion is that the 3-cent fare was reasonable when in force; that the gross returns under the 2½-cent fare did, while it was in force during average years, and if it was now restored would, exceed the returns under the 3-cent fare, and that no valid reason, either because of changed conditions or increased cost of operation, appears in the record with sufficient certainty, for holding that intrastate passenger returns, held by us to be adequate during the period of the 3-cent fare, should be held inadequate now.

Our conclusion is that, if the plaintiff's entire intrastate business in Alabama was unremunerative during the period of the 2½-cent passenger fare, it must, so far as this record shows, have been due to its freight rather than to its passenger traffic. In this conclusion we are fortified by the plaintiff's statement, appearing as exhibits to the supplemental bill (G. W. L. 4 and 7), that during the period from 1906 to 1912, inclusive, the plaintiff suffered a loss on its entire intrastate business in Alabama in the aggregate of $235,074.71, and averaging $33,567.39 each year for the seven years, and that, adopting plaintiff's methods of distributing expense and value, there was during the same period a net operating profit on its intrastate passenger business ranging from $44,489.54 in 1906 to $238,084.06 in 1912, and averaged each year for the seven-year period $156,407.99. The responsibility for any loss on intrastate business that may exist, as between freight and passenger traffic, would seem to be located on the freight traffic by these statistics, as against any general statement in the record that it costs as much or more to earn a dollar of revenue in the passenger than in the freight traffic. If a deficiency in intrastate earnings has existed during the seven-year typical period, it is due to the freight rather than the passenger rates in force during that period.

It is true that this case is not to be prejudged by our decision in the Louisville & Nashville Case, and yet the conditions upon the two railroads may be compared, since, if the traffic conditions on the plaintiff's railroad are more favorable to the lower rate than they are on the Louisville & Nashville Railroad Company, unless we are to repudiate our decision in that case, the comparison would result in sustaining the reasonableness of the 2½-cent fare, as applied to the plaintiff. The plaintiff's line consists of approximately 210 miles of track, no substantial part of which consists of branches. For the fiscal year of 1912,

passenger miles per mile of road on plaintiff's road were three times those on the Louisville & Nashville railroad; passengers per mile of road were more than 2½ times greater on plaintiff's road than on the Louisville & Nashville; passenger train revenue per mile of road was more than 2½ times larger on plaintiff's road than it was on the Louisville & Nashville; passenger train revenue per train mile was 25 per cent. greater on plaintiff's road. Gross operating revenue and net operating revenue, per mile of road, on business of all classes, were approximately three times larger on plaintiff's road than upon the Louisville & Nashville. These figures show a much denser traffic on plaintiff's road than upon the Louisville & Nashville. Other conditions being substantially the same, if a 2½-cent fare was reasonable on the Louisville & Nashville system, it would be all the more reasonable for the plaintiff's railroad. It is said, however, that conditions are not the same; that the original cost of plaintiff's road, owing to the character of the country through which it runs, was much greater, and that the cost of operation for like reasons is higher. Comparative figures as to the cost of passenger operation are not supplied. We do not doubt that the nature of the country traversed by plaintiff's railroad renders operation more costly and original construction more expensive. There is, however, so marked a difference between the density of traffic on plaintiff's road and that of the Louisville & Nashville that it seems difficult to avoid the conclusion that a rate which the Louisville & Nashville could endure without confiscation could be as well or better endured by the plaintiff.

Our conclusion is that, though it may have required a 3-cent rate to produce adequate returns to plaintiff during and prior to 1907, the country along its line of road has expanded so much since that period, as shown by the plaintiff's passenger earnings (especially its intrastate earnings), that a 3-cent fare is now shown to be no longer necessary to the plaintiff, and we are induced to believe that the increased earnings, being due, as appears from the record, to the permanent settlement of the country, as well as to the return of prosperity, will continue. At least the probability of permanency is so great as that we would not feel justified in disturbing the action of the commission while the increase still continues, and in advance of the final hearing. If, upon the final hearing, there is a showing of a decline in plaintiff's passenger earnings, under the lower rate, it will then be time enough to enjoin the enforcement of the commission's order, upon proper showing of confiscation. Pending the final hearing, the application for a temporary injunction is denied.

NILES, District Judge (concurring). [5] It is elementary that preliminary or temporary injunctions should only issue in cases of extreme urgency, where the right is clear, and where considerations of the relative inconvenience is strongly in complainant's favor, and as is laid down in 22 Cyc. 746:

"An injunction, whether temporary or permanent, cannot as a general rule be sought as a matter of right, but its granting or refusal rests in the sound discretion of the court under *the circumstances of the particular case*. Especially is this the rule in the case of a temporary injunction, where the

granting of the injunction depends upon *the determination of questions of fact and the evidence is conflicting.* This discretionary power, however, is not arbitrary and unlimited, but must be exercised reasonably and in harmony with well-established principles. And when the case made out by the complainant is perfectly clear, and he has complied with all the requirements of the law for the issuance of an injunction, he is entitled to the injunction as a matter of right."

On the other hand, the same authority limits the rule in that:

"The right asserted by complainant, however, must be perfectly clear and free from doubt, where the effect of a preliminary injunction will be more than merely the maintenance of the status quo, or where the injunction will cause defendant greater loss and inconvenience than that which will be suffered by the complainant in the absence of an injunction. In any event an injunction must be refused if the complainant's case is so doubtful that it does not appear reasonably probable that he has the right claimed, and that is being violated, *or if he does not make it appear reasonably probable that an irreparable injury is impending and will occur before the final hearing can be had.*" 22 Cyc. 753.

It is conceded that acts that will interfere with the conduct of complainant's business tending to destroy his profits, do an irreparable injury, and authorize the issuance of a preliminary injunction, and especially that the enforcement of laws fixing unreasonably low rates for service by quasi public corporations will be restrained in proper cases.

Complainant states that:

"The general rule of equity is that, on an application for a temporary injunction, it need not appear that the complainant will certainly be able to establish its claim, but only that there is a reasonable ground to believe that complainant may ultimately be successful in its claim, and, further, it is not necessary that it should clearly appear that complainant will ultimately succeed; it being sufficient if he makes out a prima facie right." 22 Cyc. 822.

This, of course, is the rule, but the same high authority also lays it down on page 783 that the discretionary power of the court in granting or refusing a temporary injunction should be exercised with a particular view to the relative amount of inconvenience or injury to be suffered by the parties. Especially is the rule extended to the interest of the public, respecting its injury or inconvenience.

Complainant's counsel cites many authorities, among them the decisions of the United States Circuit Court of Appeals for the Fifth Circuit, as entitling complainant to a temporary injunction in this instance. These decisions, however, only emphasize and apply the general principles and rules to the particular cases under discussion, which brings us back to the basic principle of injunctions that the "granting or refusal rests in the sound discretion of the court *under the circumstances of the particular case."*

[6] In the instant case, the Railroad Commission of the State of Alabama, under its authority, ordered complainant, South & North Alabama Railroad Company, to reduce its passenger rates between all points in the state of Alabama from 3 cents per mile to 2½ cents per mile, on the ground that the 3-cent rate was *unreasonable*. Eliminating all other contentions of complainant as shown by its bill, which are unnecessary to be discussed for the purpose of this decision, the

issue here presented is whether the sought to be established rate of 2½ cents is an unreasonable one.

Complainant is, without doubt or dispute, entitled to a fair return upon the reasonable value of its property devoted to the public service in Alabama. If the reduction of one-half cent per mile in its passenger rates operates to prevent a fair return on its capital or value of its property in Alabama, then complainant is entitled to the benefit of the protection of the courts.

A 3-cent passenger rate had been heretofore charged by complainant. This rate, complainant admits, is fair, reasonable, and just, though such rates between points in Alabama (quoting complainant)—

"have never yielded as much as a fair, just return on the value of complainant's property within the state of Alabama devoted to the service."

To obtain the extraordinary relief sought herein, complainant must clearly establish the fact that its business in the state of Alabama, based upon a 3-cent rate, is an unprofitable one—that is, one not yielding a fair return on its *value*—and that a reduction of its passenger rate of one-half cent per mile would be such a substantial factor in further rendering its business an unprofitable one as to be confiscatory.

At the very outset the question arises as to the value of complainant's property upon which it is entitled to a reasonable and fair return. What is the *value* of the total investment of complainant? What is the amount of its earnings, freight and passenger? What proportion of expenses is charged to each department, and how finally is a result obtained which will establish the reasonableness or unreasonableness of its passenger rate? The valuation of the property, therefore, must be first considered. If an excessive valuation appears, then all estimates based thereon are necessarily open to attack, and cannot show true conditions.

It was held in Minnesota Rate Case that present value is only to be considered, but that:

"The cost of reproduction method is of service in ascertaining the present value of the plant when it is reasonably applied, and when the cost of reproducing the property may be ascertained with a proper degree of certainty."

Complainant estimates the total value of its property on June 30, 1912, at $24,031,001.58. Defendants object to this valuation upon the basis of cost to reproduce all the physical property, less the amount of depreciation, as being excessive by from 4,000,000 to 5,000,000. Complainant's estimate included the value of its franchise estimated at about 4,000,000, which was arrived at by taking the value as assessed by the State Tax Commission, which was supposed to be 60 per cent. of the full value, and raising it to 100 per cent, thereby improperly (as defendants contend) adding nearly 2,500,000 to its estimate. Other items objected to were: (1) Interest during construction; (2) the value of the right of way; (3) addition of cost for "seasoning;" (4) apportionment of equipment to complainant by Louisville & Nashville Railroad; (5) material and supplies, and other minor items.

The court has carefully read the testimony and examined the record on this point, and it would seem the complainant has given itself the

benefit of every doubt in arriving at its valuation, and thus has placed a "railway value" on its property when present value should govern.

Aside from this question, however, taking the valuation as fixed by complainant upon which it should be allowed a reasonable return, has complainant shown that the net passenger earnings on a 3-cent basis are not a fair return on the value of its property? It must establish this proposition before a 2½-cent rate could be claimed as confiscatory. Adopting its own valuation and its method of apportionment of passenger earnings and expenses, the court fails to see wherein a 2½-cent rate would be so unreasonable, arbitrary, and unjust as to entitle complainant to the injunction as prayed. The volume of business of complainant as shown by the record is increasing, it is enjoying a growing business. It is beyond dispute that the more business of this character done, the less the expense, for the reason that as passenger trains have to be run on schedule time, a certain equipment used, a train of coaches crowded with passengers can therefore be hauled and operated at the same expense required to operate a train of coaches with few or no passengers. Under the proof, under existing conditions, considered in the light of past experience, with both a 2½-cent rate and a 3-cent rate in effect, it is difficult to conceive that a reduction in its rate of one-half cent alone could or would operate to that extent as to render a fair return impossible on complainant's property devoted to passenger business.

On the theory that complainant, by reason of a 2½-cent rate, would lose $92,500 annually, with its passenger business steadily increasing with the country's development, if for no other reason, the future for it would indeed have a melancholy tinge. Passenger business would have to be discouraged, in fact refused, or bankruptcy would surely follow, graphically illustrating the paradox, "The more you win, the more you lose." Certainly no hindrance or obstruction should be ever placed in the way of a transportation company, upon which the development of a country's resources so much depend. A vital necessity exists for them, and unjust and discriminatory laws enacted against them should be frowned upon, and public sentiment be directed to the community of interest and interdependence, one upon the other. Railroad companies should be allowed as a matter of simple right, as they are entitled under the law, to a reasonable return on their capital, and the court has most carefully considered this case, with this idea in mind, but is unable from the record to sustain complainant's contentions on the application for a temporary injunction.

Great stress has been laid in this case to the fact that, since August 12, 1913, a 2½-cent rate has been in force on the Louisville & Nashville Railroad Company, which company is principal owner and operates complainant's railroad. An application was made by the Louisville & Nashville Railroad Company for an injunction pendente lite to restrain the enforcement of an order of the Railroad Commission of Alabama, establishing a 2½-cent rate for that road. This application was heard before Circuit Judges PARDEE and SHELBY, and District Judge GRUBB, who held that the 2½-cent rate was not confiscatory, and the injunction was denied; that because of the relations of the Louisville & Nashville Railroad Company and this complainant,

no rate which had been held.not confiscatory as to the Louisville & Nashville Railroad Company could be, when applied to complainant, a mere division of the Louisville & Nashville Railroad Company; that because the Louisville & Nashville Railroad Company accepted the 2½-cent rate for itself and all its other branch lines in Alabama, and because, too, the density of traffic, both passenger and freight, of the complainant is enormously greater than on the aggregate other Louisville & Nashville Railroad Company Lines in Alabama, and that of any other road in Alabama, this complainant should not ask nor expect a higher passenger rate than its less fortunate competitors.

It was not considered necessary to discuss the Louisville & Nashville Railroad Company Case in order to arrive at a conclusion in this case, though in passing, the Louisville & Nashville Railroad Company Case presents many similar points of controversy, and the court is in full accord with that decision.

For the reasons.advanced herein, the court is of opinion that the temporary injunction should be denied, and the restraining order dissolved.